Your Honor, the first case of the morning call, 2-11-1252, consolidated with 2-11-1280, Charles August as the appellant and Mr. Robert Hanlon. On behalf of the parties, Mr. Adrian Gosch for the appellant, Mr. Robert T. Hanlon representing himself. Good morning, counsel. Please be seated. Mr. Gosch? I apologize, Judge, they apparently told me I was at the wrong table, so. Counsel, may it please the Court, good morning, Justices. Again, my name is Adrian Gosch on behalf of the plaintiff, Charles August. The reason we brought the appeal was based on threefold purposes. The main one was dealing with the most recent Illinois Supreme Court case that came down in Sanholm v. Cooper. And in that case, the Supreme Court was conducting its analysis again of the Citizen Participation Act that was recently passed by the legislature back in 2007. And in that review of that legislative history and interpreting the act, what the Supreme Court has seemed to state in that case is that they're trying to narrow the application of the Citizen Participation Act in cases in Illinois. They seem to indicate that there is maybe a more broader application of this act than what was originally intended by the legislature. And when they're talking about, I think, that broad application is, they refer to that the legislature was not creating the Citizen Participation Act to create some sort of new privilege in the area of defamation law or some sort of absolute privilege to people who go out and make defamatory statements. And so what I think the Supreme Court was trying to do was say, we need to limit the application of this act to achieve what was really the main purpose and the main goal of the legislature. And that would be what? Well, the main purpose that the legislature passed was to strike those cases that are deemed meritless and retaliatory slap suits. Not things that might be, could be, but are, in fact, meritless and retaliatory slap suits. And that's why they created what I think is this new standard to say, in order for the CPA to apply to cases, there has to be a finding by the trial court or the court jurisdiction to state that the complaint filed by the plaintiff against the defendant for certain defamatory statements or certain tortious conduct solely is based upon or related to that individual's exercise of their constitutional rights, whether it be the right to petition government, the right to free speech, the right to associate. And why was it not solely related in this case? It's not. That's what the Supreme Court held. And I think arguably they somewhat restricted the broad scope as it had been interpreted previously. But why was it not solely related in this case? Well, I think what you do is you go back and look actually at this court's analysis in the case of Hytel Group versus Butler back in 2010. I think what the Supreme Court was doing was actually following this court's analysis of the Citizen Participation Act to say, where are we going to apply this application of the law? And the reason why it doesn't solely apply in this case is because when you look at what the trial court did throughout the procedural history, the complaint filed by Mr. August, which eventually ended up as a Second Amendment complaint, was attacked numerous times by the defendant in this case. I think there was over 18 separate pretrial motions attacking the did we plead appropriate cause of action. And after going through those 18 separate pretrial motions, the trial court came to the conclusion that, yes, Mr. August has pled a valid cause of action for slander per quad as well as invasion of privacy false light. And when you look at the trial court's findings, it says, yes, there is a cause of action here. This is not solely based upon, in essence, a retaliatory action because Mr. Hamlin filed a lawsuit against August six months prior to Mr. August filing his defamation claim. That it's not solely based on. That his case does have merit. That there is a cause of action. That there has been pleading sufficient for the court to find that Mr. Hamlin conducted himself in a manner that did rise to a level potentially of defamation. And that Mr. August has the right to pursue his claim in court to seek redress for those damages. And I think what the Supreme Court was doing was saying, look, you have to look at the public policy section of the CPA and say, what are we trying to do here? Are we trying to grant this broad immunity to, in essence, give people the unfiltered right to commit defamation? Or are we trying to narrowly apply this law to say it's only going to apply in certain situations where, in fact, the lawsuit filed is in retaliation. The lawsuit filed is trying to chill someone's rights. Now, the plaintiff also alleged that he was not selected to run for the position of treasurer for Local 150. And that he was unable to act in his role as a principal fundraiser. So the plaintiff is pointing to those factors also against the idea this is simply some retaliatory suit. He's alleging there were some serious negative impacts to him as a result of these comments. Is that right? That's correct. Those go up to the special damages section of what you have to prove for slander per quad or the invasion of privacy and false light claims. And so the trial court looked at those allegations and found that those were valid cause of actions or valid statements for special damages under both cause of action and so getting back to again why this complaint is not solely based upon what the defendant might argue is exercise of his constitutional rights. The Supreme Court also said the reason we have a CPA is to prevent some sort of chilling effect. And there has been no chilling effect in this case. When Hanlon filed that other lawsuit against Mr. August alleging theft, alleging fraud back in I think it was June of 2006, that lawsuit continued on to its entirety. That lawsuit continued on for a couple years up until the date of trial. That lawsuit was not the plaintiff in that case, Merriman Excavated. They weren't chilled. They continued with their lawsuit. That lawsuit was voluntarily dismissed by them on the eve of trial. There was no chilling effect. Counsel, let me ask you this, Steve. As I was reading this, the Act defines a person as any individual, corporation, et cetera, two or more persons having a joint or common interest. Does an attorney representing a client fall within the definition and therefore obtain coverage under the Act? Is that an issue at all? Well, our position then, again, this is I think a new question for the State of Illinois. I don't think it's ever been addressed that I've seen in any case law. In my position with respect to whether or not the attorney falls under that definition, we would say no. I think there has to be a distinction as far as a plaintiff has an interest with respect to pursuing certain rights. When the attorney comes in to represent that individual, they're not sharing that same common interest. However, the attorney is representing that individual to pursue those rights. And I think there is a distinct distinction. That's the same as if I were to represent some sort of right, well, white supremacy group. Does that mean because I represent them, I share their common interest, that I want to see their ultimate goals, that the white man will rule the world? Of course not. And so I think that's where the distinction comes into play. The argument is some superficial appeal, but I believe that we had unearthed a California case that interpreted a lawyer as falling within the coverage. Are you aware of that case? I am. I think that's the Tahari-Larger v. Evans case. But I think if you look at other case law from California that tries to limit the application of the Tahari case, where they talk about not every instance because there might be litigation pending, an attorney does something that might have a connection to litigation. Is it going to fall within the, I don't know what California calls it, but the Citizen Participation Act? And there's other cases that talk about actions by an attorney that are ancillary to the litigation are not going to fall within their Citizen Participation Act. And I would argue the same thing here. Again, you have Mr. Halen making comments to a newspaper reporter outside of the courthouse. He's filed a complaint. This isn't something where we're in the courthouse and a hearing just took place and he's making comments based upon that. It's something separate and apart. It's something ancillary. It's something that he decided to do. It's not anything that his client did and he was simply commenting on at the time of a court proceeding. But it's something outside, something ancillary. And I think that is the distinction from the California cases why you would say in this instance we're not going to expand that definition of a person to include the attorney that's representing somebody. And I think to me that becomes important that the common interest element of that definition, does the attorney representing him, as soon as he says I'm filing my appearance on your behalf, do they have the same common interest? Or is he simply representing that client to pursue the client's interest? In any event, it's a question of first impression in Illinois. Is that correct? That's correct. I have a threshold question on jurisdiction. In your brief, you filed with respect to the plaintiff's appeal. It was certainly lack of jurisdiction over defendant's appeal because it was allegedly filed 38 days after the trial court's ruling. Okay? I believe you filed your appeal one day earlier. So would the argument not also apply to your appeal? No, it wouldn't because what happened was in the trial court, it came up for a hearing on all the motions on November, I forget the date. I have to go back and look through it. But it wasn't the same day. The trial court had made a decision with respect to just Mr. Hanlon's request for attorney's fees on November 1st, I believe it was. On November 8th is when the court came back and granted this decision with respect to the dismissal under the Citizen Participation Act. So there was two separate court dates that the trial court dealt with different issues. So on November 1st was the trial court just dealt with the issue of the request for attorney's fees. And on the November 8th date was when, again, this was on, let me correct that. This was dealing with the motions to reconsider. So the court had already decided it was going to grant dismissal under the Citizen Participation Act. On November 1st is when the court had denied Mr. Hanlon's motion to reconsider the request for attorney's fees. And then on November 8th was when the trial court had dismissed our motion to reconsider the dismissal under the Citizen Participation Act. So I believe there was different time limits that it started for those different issues. All right. Counsel, you also urge us to analyze the defendant's motion for summary judgment as if it was a Section 2-619 motion to dismiss. However, the SLAP legislation clearly applies to any motion, allows a summary judgment. So how would our review differ if we were to analyze it under a 2-619 or a summary judgment? I think if you look at the Supreme Court case and the Walsh decision, if you look at this court's reasoning in the Sandholm v. Cooper decision that was overturned by the Supreme Court, but also this court's decision in the Hytel v. Butler case, this court and the Supreme Court have all said that when you're analyzing the Citizen Participation Act, you're looking at it under the standards of 2-619. Because what happened in those cases was Plaintiff would bring the motion to dismiss based upon 2-615. And the court said, regardless of what you're going to call it, regardless of what you're going to claim to bring it forward under, because the Citizen Participation Act is acting as, if you want to put it, some sort of immunity or some sort of privilege to have the complaint dismissed, then we're going to look at it under the 2-619 principles as opposed to summary judgment principles, as opposed to motion to dismiss pursuant to 2-615. So I think the Supreme Court, in my mind, from what I've seen, has stated that if we're going to review the CPA, we're going to do it under those principles. And I think this court has agreed with that in the Hytel case as well as its own analysis in the Sandholm v. Cooper case. Isn't that a distinction without a difference? How does that affect our analysis here? It's the normal review on either. What's the difference? Well, I think the difference comes down because with 2-619, you're looking at, from the standpoint of, is this complaint filed solely based upon the actions of the defendant in this case? Meaning, is it filed in retaliation to chill his response or chill his exercise of constitutional rights? And so when you're looking at it under the 2-619 principles, what you're doing is you're saying, we are looking at the plaintiff's complaint. We are taking all those allegations as true. We are taking the allegations that they make as all well-pleaded facts as true. And then you also take that analysis of the trial court has looked at and said the plaintiff has stated a valid cause of action. And I think that goes to the question then, does this case have merit? Does this case have merit to pursue that the plaintiff, Charles August, is able to seek redressing the courts for this alleged defamatory conduct? And again, getting back to that, if you look at the public policy section of Section 5 of the CPA, the legislature put in there that the importance of applying this act is you have to do this balancing factor where you have to balance the rights of somebody who has been wronged and their ability to seek redress in relation to this chilling effect of trying to, in effect, scare somebody in dropping their lawsuit. And I think when you look at the whole picture again, it comes down that there has been no chilling effect. It comes down that there is merit to this complaint. And so I think based upon those issues, based upon the Illinois Supreme Court's finding that, in fact, there has to be a finding that it was solely based upon, that there is no merit that the complaint should stand. Also, with respect to, I think what, why we're also asking for the court to reverse the trial court's decision was, if you read through the transcript of the trial court at the hearing on the Citizen Participation Act application, the judge spoke quite often about that he believed this act was creating a qualified privilege or creating an absolute privilege, as he called it. And the Illinois Supreme Court has been very clear in the new case of Sandholm v. Cooper that that is, in fact, not the case. That, in fact, they did not create that absolute privilege. And I think that alone indicates that the trial court, when they reviewed the defendant's motion for dismissal in the CPA, was not right or incorrect because he was looking at it from a standpoint of saying, well, yes, I think the plaintiff's case has pled a cause of action, has merit, but I also have to look at it because now I believe there's some sort of absolute privilege that's been created, and therefore I'm going to grant the dismissal to the CPA. And I think based upon the Illinois Supreme Court's new holding that that's incorrect, that there is no absolute privilege, and that analysis from the trial court was incorrect. And that's why I believe it should also be reversed and sent back down to the trial court for them to look at it from the new standpoint set by the Illinois Supreme Court to say, is this without merit? Is there a burden-shifting issue here? How is this operating under Sandholm? Who has the initial burden? The initial burden falls upon the defendant. I think this court in its case of Hytel and the Illinois Supreme Court in Sandholm set forth very clear that the initial burden falls upon the defendant to say, is this complaint solely based upon the actions of the defendant, or in this case the defendant's plaintiff in filing the lawsuit? And so the court has to make... If that's done, then it would shift out. The plaintiff would then have to prove by clear and convincing evidence that the defendant's acts are not immune. So there's a lot of shifting, but the defense initially has the burden, correct? Right. So our position is that we don't even get to Section 20, which talks about the shifting of the burden. We don't even get to that clear and convincing standard because we haven't met the elements of Section 15. We haven't even got past the defendant's initial burden. And I think when you look at the Illinois Supreme Court case, they take the same position that there is that initial burden, and there has to be that first finding by a trial court to say the defendant has met his burden. And when you go back through the transcripts of the trial court's decision, there was never that initial finding. There was never that initial burden met. We filed a motion to dismiss under the CPA. It's your responsibility now, plaintiff, to present us clear and convincing evidence that this is not based upon the execution of their constitutional rights. And so I would agree that that standard, or I would argue that standard has not been met, that initial burden has not been proved. I think the buzzer. Oh, I'm sorry. I missed the buzzer. Is that you? Thank you. All right. You'll have time on that, everybody. Thank you. Mr. Hanlon. Good morning, Justices of the Court, Counsel. Your Honor, just a point of clarification on a procedural issue here. I understood that we were both given the respective time for reply. Do you wish for me to respond to his arguments that were just made, or my arguments pursuant to my appeal? I think if you respond to the arguments he just made and him. Sure. I think I can do that rather succinctly. Most telling in this case, and as I begin, I'd like to ask the Court to look at the CPA, and I think it's vitally important that this Court look to the text of the CPA to ascertain how the CPA applies to the facts in this case, as well as the public policy issues associated with the case. If, in fact, this Court accepts what the plaintiffs view of how the CPA ought to work, the CPA becomes meaningless as long as a party is willing to contrive a set of reported facts to frame a complaint as a legitimate claim. Now, in the response to my appellate brief, there's a telling admission, a telling admission that the plaintiff, in fact, falsely pled in his complaint. In paragraph 50, count one of the second minute complaints in paragraph 56, it reads, As was customary, every candidate selected to run for the slate of president, Bill Dugan, was elected to their respective positions in the 2007 local 150 elections. This was the allegation which was set forth as the basis and premise for the special damages which he was required to plead. Not only was he required to plead to improve that, to pursue his claim, his claim is meritless because on page 27, they do a roundabout turn. They point to the five main officer positions. They make an argument in that case, in that appeal, that, oh, we're only talking about this one thing. But what they wrote, and they wrote it specifically, as was customary, in order to convince the court below that they could frame a complaint. And this is what a sniper suit is all about, is a party who takes a complaint and frames it in such a fashion that the complaint appears to be a valid claim, which forces the defendant to go through the process of defending the claim. And the reason this case dissolves on that allegation is because there is no merit to the claim. The Sam Holm test opposing counsel asked his court to look at, not on a de novo standard, but on an abuse of discretion standard, when he asks and makes his arguments to the court, what he asks his court to do is to ignore the fact that they want to change the facts as they move through this appellate process. And if this court accepts as true what they wrote in their appellate brief in the 1280 case, then they clearly advanced an argument that they knew all along was predicated upon a false premise, that false premise being pleading, which contains those paragraphs that I cited to you earlier in paragraph 50 and paragraph 56. That also appears on page 24 of the response in the 1280 case. Counsel, let me ask you some threshold questions. Sure. Why does the act apply to you, the attorney representing a litigant? It was your client who was ostensibly exercising the rights to petition the government by filing a lawsuit against the plaintiff and not you. Why do you fall under this act? Well, first of all, a corporation can't file an action on its own. It has to use an attorney, and I'm specifically licensed by the state of Illinois Supreme Court in order to advance arguments in court. And I do that through the exercise of my rights, my rights of free speech, my rights of association. It's through my exercise of my rights, not solely the rights of my clients. There's no case law admittedly at this point on that issue, correct, in Illinois? No, it's a case of first impression. But I think that Justice Scalia in his treatise entitled Matter of Interpretation speaks to this. I believe that Justice Scalia wrote that when a court looks at a statute, it has to assume that the legislature meant what it said by the statute. I think in his case he was referring to Congress, not necessarily the state legislature. And that what they meant was what they wrote, and what they wrote was what they meant. How are your rights involved here? Okay. First of all, it's my right of speech to advance and to articulate what it is that I feel is wrong in society. I see a union goon. Excuse me, what you see isn't, but you're representing a client. Sure, I'm representing. And aren't you putting down on paper what the clients, what the client said? In the legal. I mean to put it very simply. Correct. Keep in mind in this case it involves both extrajudicial statements that are being complained of and judicial statements. With respect to the judicial statements, as the court's aware, there's an absent attorney litigation privilege, which applies. But these were extrajudicial statements that were complained of. The extrajudicial statements were statements which were alleged to have been made by me to the press. Now, if you look at those statements on their face, and you look at my motion for summary judgment, and you look at particularly the endorsement stamps that were used in the checks that were the subject of that litigation, all those statements are true. There isn't a statement in there that's actually false. And there was no counter affidavit with respect to any of those facts. That was all ignored by opposing counsel in the court below. But when it comes to my right of speech, it's my right of speech when I get contacted by someone from the press who wants to comment about a public proceeding, that I have the right to speak to the press. And that's what is a fundamental constitutional right of free speech. And that free speech is such that that's my right. And the statements that they attribute, they themselves say that they are about or refer to a public proceeding. And so that clearly fits within the definition under the CPA and clearly fits within the definition of a person, as the court actually made an earlier inquiry, as two or more persons with a common interest. Let me ask you this threshold question. Excuse me. Plaintiff argues in his brief that we lack jurisdiction over your appeal because it was filed more than 30 days after the entry of the order disposing of the last post-judgment motion. You only briefly touched on that in your reply brief that's up here. So what is your argument that your appeal was timely? Judge, there has to be a final order of the court in order to have a proper appeal. And in order for an order to be final, it has to dispose of all the claims in the case. And I thought that with respect to the black letter law and this, the justices here being more versed in that particular element, I didn't ask Mr. Baggett to expand upon that. But it's clear to me that the final order of the court was on November the 8th because that was the order that finally disposed of all the claims in the case, meeting the definition of a final order. And that meeting the definition of a final order, and this court has jurisdiction over both my appeal and the appeal raised by Mr. August. When you're arguing the facts and when you're arguing to us the lack of ability to plead and prove damages, at least as the evidence shows now in summary judgment, the facts as you argue that any statements you made were true, is that going to the sham, the so-called sham exception to the CPA? Well, the CPA is designed to afford those lawsuits that lack merit. Now, the CPA is also designed to prevent a, or to provide a remedy to a defendant that's faced with one without having to go through the full litigation process. And what the opposing counsel wants me to do is go through the full litigation process in order to prove there's a slap in order to then, you know, get a remedy underneath the CPA. And it's a very circuitous type of logic because what that would do is it would eviscerate the CPA. Yeah, but isn't that what Sanholm alludes to? I mean, I understand you believe very strongly that the lawsuit was meritless. It was a slap lawsuit. But under Sanholm, as interpreted in statutory scheme, the defense does have the burden of proving the plaintiff's lawsuit was solely related to the defendant's response to a slap suit. And so you have the initial burden. So how did you meet that here? I met that initial burden with the affidavit which I filed in support of the motion for summary judgment. Contained in that affidavit was all the respective facts that show in support that the burden was met. Importantly, that burden was met not only through that affidavit, but it was actually done through the plaintiff's pleadings in which the plaintiff himself had alleged that this particular case was in reference to statements that were made. And so I met the burden pursuant to the act through all of those respective materials. And that's when the burden shifts, you know, to the defendant. And the defendant ignored that shifting burden in its entirety and did nothing to respond to that. Moreover, as a motion for summary judgment, they filed no 191 affidavit in support of their position. They solely relied upon their pleading. Now, in order for there to be a genuine issue of any material fact, the operative word is genuine. We have in the affidavit which I supplied to the court the official election results. We had the official election results that showed that what he pled, you know, wasn't true. We had in the affidavit that I submitted the letter from the general counsel of the union that showed that he was never slated to run for the position. Wasn't that the allegation? No. He wasn't slated because of this supposable? If you look at the date of that memorandum and the point in time at which that occurred, which is a reference into the meeting, that slating was already determined to be a different individual at the time. And that's why that particular affidavit or that particular document is important to this case, because it shows that he wasn't slated to begin with, that they already had someone else slated to run for that position. And notwithstanding that, you know, and that ties into the sham thing that you asked me about earlier. The concept here is that the court is supposed to identify a slap suit. Opposing counsel has indicated to this court that there was no finding in the court below that it was a slap suit. But to the contrary, the court did make that finding. And since the court did make that finding, and it shows, at least within the record, that what's really going on here is I represent clients that have claims against the plaintiff and his employer. He doesn't like that, so he's not going to sue the lawyer. He's going to make up the facts, and he's going to cloak the facts in a manner in which he will survive any motion to dismiss. And so long as someone is willing to do that, and if this court is willing to allow someone to do that and advance a claim, and even an argument in this court with respect to, you know, the stay-at-home threshold level, the problem is that what the court would be doing is it would be endorsing people to falsely plead, especially here since they've admitted that what they pled in the underlying case isn't true. And I find it objectionable. And not only that, I'm repulsed by the concept that someone could come into a court, and even to an appellate court, and continue in a manner, knowing full well that their case is predicated upon this falsity, which they're freely willing to admit that it's false, yet at the same point in time say, because the court below had found the pleadings to be sufficient, that they should be able to continue with the case underneath the CPA because they falsely pled at the begin with. That type of logic, it should be summarily dismissed, you know, by this court. Counsel, I have some time remaining. You've also taken appeal on the issue of denial of attorney's fees? That's correct. You're a licensed attorney, correct? Yes, I am. We know the court has reasoned that one of the reasons that statutes provide for attorney's fees to the prevailing party is to remove the financial burdens which might otherwise deter litigants from filing suits. I think that's the essential rationale. What attorney's fees did you incur representing yourself? First of all, in this case, I didn't just represent myself throughout the course of litigation. For the vast majority of litigation, I was represented by Attorney Mengley. Attorney Mengley, because of this falsity, had charged me rather significant sums for which I paid and expended. Did that attorney work on the motion? Not on the motion. And you're right, Your Honor, that the CPA is very clear that it refers to the motion itself. As it relates to the motion itself, the time that I had to spend to draft these rather lengthy motions, the memorandums and so forth, were a time that I could not bill to my other clients. It's a pecuniary injury to myself. And in the public policy section of the CPA, it most clearly states that the purpose, the legislative purpose, was to give a litigant an attorney fee remedy. And they're the ones that set the public policy. If you were not an attorney, if you were just an ordinary citizen, you spent all these hours doing the same thing representing yourself, would you be entitled to attorney's fees? Probably not, because I wouldn't have then lost them. Why are you different than a person who may be a salesperson who now has to go into a library, and instead of selling whatever the widgets, they have to go to the library and spend hours and hours on this? And that's a pecuniary loss to them. Why are you different than John Q. Public, who's losing money by spending time in the library? I think that the distinction is the fact that because I am an attorney, and because it provides for reasonable attorney fees, the court can serve as the gatekeeper as to what constitutes as reasonable. And because I did the work of a lawyer and not the work of a salesman, I'm most clearly distinct and different in that regard. And do you have other points you'd like to make, because we're not going to give you another opportunity since you're addressing the attorney's fees? Yes. This is a very long statement, but now I can't find a place where I could come to a conclusion. Just take a minute. That's fine. Go ahead. You know what? We'll give you an additional five minutes after Mr. Gash makes the reply and then replies to your attorney fee matter. So you'll have the opportunity while you're at council table to find any other points. So we'll give you an additional five minutes. Mr. Gash. Thank you. I'll address first the attorney's fees issue. I think Illinois case law is very clear, as the justices have pointed out, that an attorney who represents himself is not entitled to claim attorney's fees because of the fear that, as the courts have recognized and I think what has happened in this case as well, is attorneys who represent themselves are going to put together a very high and excessive bill and try in turn to punish the other side as a result of Now this is being recorded, you know, so I just want you to know that all of your colleagues will be hearing this. I understand. I'm just reciting what I read. How's that? Does that qualify? I may want to do that, yes. What I read was talking about the fear that they would increase their bill to a point where it would be punished on the other side. And we had cited a case that talked about there was a similar provision in the FOIA Act and an attorney representing himself tried to do that as well and the courts came back and said, No, we're not going to award you attorney's fees because you represent yourself. And I think it's also an important distinction that the CPA and the case law is clear that with respect to attorney's fees, it's only going to apply to work that was done in preparation arguing the motion to dismiss under the CPA. It's not going to apply to other aspects of litigation, other pretrial motions, other motions to dismiss. You know, just coincidentally, I believe the FOIA Act you're referring to was amended and now provides the language was changed from made to shall. Are you aware of that? I am. I believe that's correct. But I still think their application of an attorney representing himself is still going to have the same effect. I also wanted to address, Justice Burke, you had brought up the sham exception. I think the Illinois Supreme Court in the Sanholm case had addressed that issue of the sham exception to say, Well, a defendant may try to get around this issue or this new standard solely based upon to say, Well, my actions were aimed at trying to obtain some sort of favorable governmental outcome. And I think what the Illinois Supreme Court said was that may be, but then you're just looking at the genuineness of the defendant's acts and you're not looking at what you're supposed to do now is that first step is to look at the merits of the plaintiff's complaint. And they talked about, you know, the issue of somebody could go out, make a bunch of defamatory statements, and then try to cloak themselves in the privilege and say, Well, I'm trying to seek a positive government result. And in the Sanholm case, I think they specifically referred to the fact of these parents or individuals who were making these individual defamatory statements against the athletic director were then trying to come back and say, Well, we were trying to obtain the favorable government outcome of having this individual removed because he was a danger to our kids. And the Supreme Court says we recognize that. But at the same time, that initial step to determine whether or not it's solely based upon the defendant's actions is you're looking at the complaint and the merits of the complaint. And to address that issue of our complaint in this case, again, we have addressed 18 separate motions to strike, motions to dismiss, motions for judgment on the pleadings. And the trial court has, after all those stated, there's a valid cause of action for those to count. But now we have summary judgment where we can look at other things. We can look at affidavits and depositions and things of that nature. Well, I think that becomes a question for this court to determine because I think what, again, what the Supreme Court is saying, what this court has held is when we're analyzing the Citizen Participation Act, I think there's a difference. We're analyzing that act under the principles of 2619. I don't think, I think what the courts are saying is you can call a motion whenever you want, a motion for dismissal under 2615, a motion under 2619A9, or a motion for summary judgment, regardless of what you call it. Because the CPA is, in effect, trying to apply a privilege outside of the pleadings and say, I'm cloaked in this immunity, that we're going to look at this under the principles of 2619. And so... But to put that burden on the defendant now to prove, at least at this stage of the proceedings, or come forward with evidence, with something to show that it's, that lawsuit was not solely, or was solely based on, you know, a violation of the act. Shouldn't we allow the defendants to actually put something forward in that regard? Well, I'm not saying they're not allowed to put something forward. I think that's the whole point of the hearing, and that's why there's limited discovery that's allowed by the parties to conduct, as far as what the allegations are, where they say, you know... No matter what we call it, then. The counsel has said, I've put forward that the damages are inadequate. I've put forward that any statements I made were true. It defeats this claim at this stage, whether it's a 619 or similar judgment. Therefore, it shows that this complaint meets the solely standard to get us to shift the burden to you. How do you respond? Well, I think they're able to present evidence, and I think the trial court looked at all that evidence as well and disagreed with the defendant in this case to say that, you know, these other allegations would cause this complaint to be dismissed. With respect to the allegations in the complaint, that's my time. Go ahead, Judge Arnold. Thanks. With respect to the allegations in the complaint, I mean, what the defendant fails to do in this court is to... I mean, he skips from paragraph 46 to 56, or whatever it was. He's skipping all the paragraphs in between that talk about he was slated to run for treasurer. He wasn't, or he was going to be slated to run for treasurer. Correct that. And that he wasn't. The person who was put in place did get that position. So the allegations to the court was simply, again, the positions that this individual could have been slated for was eventually elected, and as a result of that, he's lost out on this income that he could have been earning. And the trial court said that is enough to meet that burden of special damages. And based on that, Judge, we would ask that you reverse the trial court's decision. Thank you. Thank you. Mr. Hammond. Thank you very kindly for those few extra minutes. They're proving very valuable to me at the moment. With respect to this argument of Soli that opposing counsel brings down here in this appellate court, didn't bring it below. It's waived. In fact, many of the arguments that the plaintiff in this case has made on appeal were not raised below. If you could respond to counsel's comments regarding the attorney's fees, and it's black-letter law pretty much in Illinois whether you're an attorney or not, because your civil rebuttal, I think, is limited. I'm going to strike that. It isn't civil rebuttal. It's your rebuttal, and you're lost. I'd just like to hear your response regarding the attorney's fees more than anything. With respect to the attorney's fees, I think that the language of the Act and the FOI Act, which was raised by opposing counsel, was the language there was different in that the authority which opposing counsel relies on in the FOI Act was for those cases that dealt with the FOI Act, as it had previously been drafted in the CPA Act. It very specifically sets forth public policy that commands the court to provide attorney's fees, which is different and distinct than what had been the law as it applied to those other acts. More importantly, there's a distinction between private litigants and the government. I think that when the court makes a public policy decision with respect to a governmental entity, it has to look at the totality of the statutory scheme, and what we don't want to do is punish the government because that ultimately punishes society as a whole. And so it makes sense in the sense of a FOI Act that a court would have a policy that would not have a governmental entity paying attorney's fees. However, in the statutory scheme in the CPA, it very clearly set forth and commands that the court provide the attorney's fees, and it doesn't have permissive language. And so what the court below did is it interjected a new public policy that was not prescribed by the legislature, and in essence serves as a super legislative act. And this court, if it adopted that, would also be acting in that super legislative capacity. So basically what you're saying is that this act has changed the paradigm from those other cases? I think that this act has changed the paradigm on numerous fronts, and it's a rather progressive legislation. And when the Illinois General Assembly adopted it and it was signed into law by the governor, it most certainly changed the paradigm on numerous fronts. And that was an act the legislature wanted to do, wanted to stop the types of suits that I'm the defendant of here. And so the answer to your question is yes, Your Honor. Thank you, counsel. Thank you. At this time, the court will take the matter under advisement and render a decision in due course. The court stands in brief recess until the next case. Thank you.